UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

BOARD OF TRUSTEES OF THE
NORTHWEST IRONWORKERS
HEALTH AND SECURITY FUND,
*et al.*,

      Plaintiffs,

      v.

DENNIS TANKSLEY, *et al.*,

      Defendants.

NO.  CV-07-367-RHW

**ORDER DENYING PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT**

## I.  Background

    The Court previously denied Defendants' motion to dismiss/motion for summary judgment, finding that the Complaint alleged a sufficient basis for jurisdiction and that genuine issues of material fact precluded summary judgment (Ct. Rec. 74). Now before the Court is Plaintiffs' Motion for Summary Judgment (Ct. Rec. 95). Although not specified in its motion, it appears that Plaintiffs seek summary judgment on only their first two causes of action: alter ego and successorship liability.

    This is a successor case to Cause No. CV-04-383-RHW, in which Plaintiffs sought relief under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.,* against sole Defendant Rodbusters, Inc. On September 28, 2006, the United States District Court for the Eastern District of Washington granted summary judgment in Plaintiffs' favor.

    Plaintiffs filed the instant suit on June 6, 2007, alleging ongoing breach of

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT** * 1

collective bargaining agreement by alter ego and successor employer and naming the officers of Rodbusters, Inc. as individual defendants. Plaintiffs have since amended their complaint twice, naming two additional companies (Rodbusters Company and Rodbusters Rebar Company) as defendants, and adding new theories of liability (corporate disregard and breach of fiduciary duty).

## II.  Facts

Most of the following facts are taken from the Court's previous summary judgment order.

Following the Court's judgment for Plaintiffs in Cause No. CV-04-383-RHW, Rodbusters, Inc. filed a bankruptcy petition on October 24, 2006. From October 25, 2006, to November 1, 2006, Defendants Tanksley and Seidel (the only officers of Rodbusters, Inc.) did business as a general partnership known as Rodbusters Company, while awaiting a certificate of incorporation for Rodbusters Rebar Company, Inc. (hereinafter "RRC"). That entity was incorporated on November 2, 2006.

Rodbusters Company and RRC both operated out of the same premises as Rodbusters, Inc., and performed the same type of business. Defendants Tanksley and Seidel were the sole officers/partners of all three entities. RRC used at least some of the same assets used by Rodbusters, Inc., including vehicles, equipment, and a telephone line. RRC also assumed Rodbusters, Inc.'s loan and debt obligations to AmericanWest Bank.

On December 18, 2006, RRC sent a letter to at least four general contractors with whom Rodbusters, Inc. had done business. The subject of the letter was "Company Reinstatement"; it was signed by Tina Tanksley, listed as an Administrative Assistant for "Rodbusters." The text of the letter included the following:

> This letter is being sent to inform any contractor doing business with Rodbusters that there have been some changes made to our company. Rodbusters Inc. has been shut down due to unfortunate circumstances

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** * 2

and an unfair claim brought against the company. Rodbusters Rebar Company (Rodbusters Co.) has been opened as a non-union business under the same ownership. We still have our shop and all of our equipment along with 3 full time supervisors, 4 regular workers, and we will train new employees as needed. Our contact information will remain the same because our location has not changed. Also, the nature of the company's business has not changed, we have just re-established under a new name.

Ct. Rec. 64, Exhibit B, p. 68.

Rodbusters, Inc. had thirty-four employees; out of these, at least four continued as employees of RRC. All four employees (Jason Gates, Brian Seidel, Steven Seidel, and Brian Busch) signed letters on November 10, 2006, withdrawing themselves out of Northwest Ironworkers Local 14, a party to the collective bargaining agreement at issue (Ct. Rec. 97, Declaration of Michael H. Korpi, Ex. A, pp. 61-64).

Since the previous summary judgment order, the record now indicates that in its history, RRC has only employed a total of four employees. All four (the same Jason Gates, Brian Seidel, Steven Seidel, and Brian Busch) were employees of Rodbusters, Inc. The record also indicates that RRC took on at least two of Rodbusters, Inc.'s preexisting construction projects. These facts are undisputed.

Defendant has submitted a Counterstatement of Facts (Ct. Rec. 113), which primarily relies on a Declaration of Dennis Tanksley (Ct. Rec. 112). Tanksley declares that he himself was a "loyal member of the Ironworkers Union for 35 years" and that neither he nor RRC as an entity harbor any anti-union animus. He also sets forth his theory of the case: that the prior judgment against Rodbusters, Inc., and the current litigation against RRC are "selective litigation" motivated by his vindictive former employer. Tanksley declares that RRC did employ union employees for a brief period and paid the benefits required under the collective bargaining agreement directly to the employees. However, according to Tanksley, the union would not allow RRC to sign a collective bargaining agreement until Tanksley took certain steps towards satisfaction of the existing judgment

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT * 3**

(including monthly payments of $40,000 and lien on the home of Tanksley's son).

In their reply, Plaintiffs do not dispute the existence of the facts alleged in Tanksley's declaration, but instead argue that the facts are inadmissible because they are not based on personal knowledge, and are in any event immaterial to the legal arguments Plaintiffs advance in their motion.

### III.  Standard of Review

Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to (2) any material fact and that (3) the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "material fact" is determined by the substantive law regarding the legal elements of a claim. *Id.* at 248. If a fact will affect the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth, then it is material. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305-06 (9th Cir. 1982). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby,* 477 U.S. at 248.

The moving party has the burden of showing the absence of a genuine issue as to any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). In accord with Rules of Civil Procedure  56(e), a party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but... must set forth specific facts showing that there is a genuine issue for trial." *Id.* Summary judgment is appropriate only when the facts are fully developed and the issues clearly presented. *Anderson v. American Auto. Ass'n*, 454 F.2d 1240, 1242 (9th Cir. 1972). "Rule 56(c) mandates the entry of summary

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** * 4

1    judgment against a party who fails to make a showing sufficient to establish the

2    existence of an element essential to that party's case, and on which that party will

3    bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

4    (1986).

5                                    **IV.  Discussion**

6           It appears that neither party's filings properly frame the issues before the

7    Court. What Plaintiffs set out as two separate causes of action in their Complaint

8    and two separate arguments in their memorandum appear to be in fact a single

9    inquiry. Meanwhile, Defendants stand on the fact that RRC never signed a

10   collective bargaining agreement, and that a bankruptcy separates Rodbusters, Inc.,

11   from RRC, but fail to confront the case law regarding successor employer liability.

12          Both of the cases on which Plaintiffs primarily rely form only part of the

13   picture here. First, *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1470

14   (9th Cir. 1995), involves a claim of "double-breasting" – that is, where a defendant

15   simultaneously operates a union firm and a nonunion firm, and the union alleges

16   that the latter is merely an alter ego of the former, designed to avoid obligations to

17   the union. While the factors employed in *Nor-Cal*'s alter ego inquiry are relevant

18   to the Court's analysis, the factual scenario here (involving a successor employer)

19   is distinct in important ways. Second, *Trustees for Alaska Laborers-Constr. Indus.*

20   *Health and Sec. Fund v. Ferrell*, 812 Fed. 2d 512, 516 (9th Cir. 1987), has been

21   limited and re-characterized by later cases.

22          Two cases following closely on *Ferrell*'s heels articulate the standard that

23   applies here:

24          [A] non-signatory employer may be held to the terms of a CBA signed
            by another employer under either the 'alter ego' doctrine or the 'single
25          employer' doctrine. Under the alter ego or single employer doctrines,
            a non-signatory successor employer will be bound to the terms of its
26          predecessor's CBA if the transaction transferring ownership to the
            successor is a sham designed to avoid the obligations of a CBA or if
27          the entities comprise an integrated enterprise.

28   *Sheet Metal Workers Int'l Ass'n., Local No. 359 v. Arizona Mech. & Stainless,*

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT** * 5

*Inc.*, 863 F.2d 647, 651 (9th Cir. 1988). Put another way: "[A] successor employer will be bound to the substantive terms of a prior CBA if the successor employer is merely the alter ego of the predecessor employer," that is, where "[t]he changes between predecessor and successor [are] technical in nature rather than a substantive change in the management." *New England Mech., Inc. v. Laborers Local Union*, 909 F.2d 1339, 1343 (9th Cir. 1990).

*New England Mech.* implicitly criticizes *Ferrell* for failing to engage in the alter ego inquiry, and instead appearing to hold that a finding of "successorship" is sufficient to impose liability for failure to fulfill the obligations of a preexisting CBA. *Id. New England Mech.* does not go so far as to overrule *Ferrell*, but characterizes it as a case in which a proper inquiry would have demonstrated that the second employer was in fact an alter ego of the first. *Id.*

  Under *New England Mech.*, then, the Court must determine whether the undisputed facts establish that RRC is merely an alter ego of Rodbusters, Inc., designed to avoid the obligations imposed by the CBA Rodbusters signed. "Under the alter ego doctrine, the court considers the interrelation of operations, common management, centralized control of labor relations, and common ownership." *Gateway Structures, Inc. v. Carpenters 46 Northern California Counties Conference Bd. of United Broth. of Carpenters and Joiners of America*, AFL-CIO, 779 F.2d 485, 488 (9th Cir. 1985). "If these factors show that the transaction is a sham designed to avoid the obligations of a collective bargaining agreement, the nonsignatory employer will be bound." *Id.*

  As recited above, Defendants have not disputed the following facts: Rodbusters Company and RRC both operated out of the same premises as Rodbusters, Inc., and performed the same type of business. Defendants Tanksley and Seidel were the sole officers/partners of all three entities. RRC used at least some of the same assets used by Rodbusters, Inc., including vehicles, equipment, and a telephone line. RRC also assumed Rodbusters, Inc.'s loan and debt

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** * 6

obligations to AmericanWest Bank. RRC took on at least two of Rodbusters, Inc.'s preexisting construction projects. All four of RRC's employees were employees of Rodbusters, Inc. For some period of time, RRC continued to treat its employees as members of a union entitled to certain benefits, which RRC paid to the employees directly.

These facts seem to unequivocally establish that RRC and Rodbusters, Inc., had interrelated operations, common management and ownership, and the same centralized control over labor relations – all of the factors set forth in the case law. These undisputed facts establish alter ego liability. Moreover, the record includes direct evidence that RRC intended to avoid the CBA's obligations and was merely a technical change in name: Tina Tanksley's letter dated December 18, 2006.

However, the case law also recognizes that an employer may repudiate a preexisting CBA through unambiguous action demonstrating an intent not to comply with the terms of the CBA. *Local 302, Int'l Union of Operating Engineers, AFL-CIO, v. West*, 882 F.2d 339, 401 (9th Cir. 1989); *Ferrell*, 812 F.2d at 518; *Int'l Broth. of Elec. Workers, AFL-CIO, Local Union No. 441 v. KBR Elec.*, 812 F.2d 495, 499 (9th Cir. 1987). As pointed out repeatedly in the cases, conduct effecting repudiation must be consistent and unambiguous.

The record here includes conflicting action by RRC. RRC's four employees signed letters withdrawing themselves from the union, and the December 18 letter represents RRC as a "non-union shop." On the other hand, according to Tanksley's own declaration, for some undefined period of time (contemporaneous with the four employees' letters) RRC considered itself bound by the CBA and accordingly paid benefits required by the CBA directly to its employees. Tanksley's declaration also indicates that RRC sought to become a formal party to the CBA, but that the union prohibited RRC from doing so until the prior judgment was paid.

Given these contradictory and disputed facts, genuine issues of material fact exist as to whether Defendants unambiguously repudiated the contract signed by

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** * 7

Rodbusters, Inc. Therefore, summary judgment on Plaintiffs' first two causes of action is inappropriate.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment (Ct. Rec. 95) is **DENIED.**

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and forward copies to counsel.

**DATED** this 19th  day of October, 2009.


*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge


Q:\CIVIL\2007\NW Iron Board\denySJ3.ord.wpd

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT * 8**