UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

BOARD OF TRUSTEES OF THE
NORTHWEST IRONWORKERS
HEALTH & SECURITY FUND, *et al.*,

        Plaintiffs,

        vs.

DENNIS TANKSLEY, *et al*,

        Defendants.

NO.  CV-07-367-RHW

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

      A bench trial was held in the above-referenced matter on October 26, 2009. Plaintiffs were represented by Michael Korpi; Defendants were represented by John Bury.

      This is a successor case to Cause No. CV-04-383-RHW, in which Plaintiffs sought relief under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.,* against sole Defendant Rodbusters, Inc. On September 28, 2006, the United States District Court for the Eastern District of Washington granted summary judgment in Plaintiffs' favor.

      Plaintiffs filed the instant suit on June 6, 2007, alleging ongoing breach of collective bargaining agreement by alter ego and successor employer and naming the officers of Rodbusters, Inc. as individual defendants. Plaintiffs have since amended their complaint twice, naming two additional companies (Rodbusters Company and Rodbusters Rebar Company) as defendants, and adding two theories of liability (corporate disregard and breach of fiduciary duty).

**FINDINGS OF FACT AND CONCLUSIONS OF LAW * 1**

Having fully reviewed all the materials submitted by the parties and the record in this matter, the Court enters the following Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

Following the Court's judgment for Plaintiffs in Cause No. CV-04-383-RHW, Rodbusters, Inc. filed a bankruptcy petition on October 24, 2006. From October 25, 2006, to November 1, 2006, Defendants Tanksley and Seidel (the only officers of Rodbusters, Inc.) did business as a general partnership known as Rodbusters Company, while awaiting a certificate of incorporation for Rodbusters Rebar Company, Inc. (hereinafter "RRC"). That entity was incorporated on November 2, 2006. Neither Rodbusters Company nor RRC were signatories to the collective bargaining agreement at issue here.

Rodbusters Company and RRC both operated out of the same premises as Rodbusters, Inc., and performed the same type of business. Defendants Tanksley and Seidel were the sole officers/partners of all three entities. RRC used at least some of the same assets used by Rodbusters, Inc., including vehicles, equipment, and a telephone line. RRC also assumed Rodbusters, Inc.'s loan and debt obligations to AmericanWest Bank. All of RRC's employees were previously employees of Rodbusters, Inc., and Rodbusters Company.

In October and November, 2006, Defendant Seidel and several of RRC's employees began work on a project in Blaine, Washington. At this point, both Tanksley and Seidel considered RRC to be a "union shop," meaning that all RRC's employees were union members. However, anticipating that troubles with the union would be ongoing, Tanksley prepared union withdrawal forms for all RRC's employees on the Blaine job, and Seidel took the forms with him to Blaine.

In the first week of November, 2006, Tanksley engaged in discussions with the union about Rodbusters/RRC's ability to pay the outstanding judgment, and RRC's ability to continue functioning as a union shop. Tanksley and the union

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 2

were unable to reach an agreement, and Tanksley decided that RRC would have to proceed as a non-union business. Tanksley then called Seidel, who was on the Blaine job site, informed him that RRC would have to go non-union, and asked him to announce the decision to the employees. Seidel did so, informing the employees that anyone who wished to remain with RRC must sign a union withdrawal form. Two employees – Jason Gates and Brian Seidel – chose to do so, and signed letters on November 10, 2006, withdrawing themselves out of Northwest Ironworkers Local 14, a party to the collective bargaining agreement at issue (Ct. Rec. 97, Declaration of Michael H. Korpi, Ex. A, pp. 61-64). The remaining employees left the job site.

After this point, RRC made no contributions to the union trust funds. RRC did directly pay some benefits to Steve Lawrence, an employee who decided to remain a union member and left the Blaine job site. Tanksley and Lawrence both understood that these payments were to compensate Lawrence for benefits he was due under the collective bargaining agreement for his work until November 10, 2006. Lawrence attempted to turn these payments over to his business manager at the union, who refused to accept them.

On December 18, 2006, RRC sent a letter to at least four general contractors with whom Rodbusters, Inc. had done business. The subject of the letter was "Company Reinstatement"; it was signed by Tina Tanksley, listed as an Administrative Assistant for "Rodbusters." The text of the letter included the following:

> This letter is being sent to inform any contractor doing business with Rodbusters that there have been some changes made to our company. Rodbusters Inc. has been shut down due to unfortunate circumstances and an unfair claim brought against the company. Rodbusters Rebar Company (Rodbusters Co.) has been opened as a non-union business under the same ownership. We still have our shop and all of our equipment along with 3 full time supervisors, 4 regular workers, and we will train new employees as needed. Our contact information will remain the same because our location has not changed. Also, the nature of the company's business has not changed, we have just re-established under a new name.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 3

1  Ct. Rec. 64, Exhibit B, p. 68.

2  CONCLUSIONS OF LAW

3      At trial, Plaintiff asserted two claims: (1) that RRC was liable for the prior

4  judgment against Rodbusters, Inc., under a successorship doctrine; and (2) that

5  RRC was liable for its own ongoing failures to contribute to the trust funds, under

6  an alter ego theory.[1]

7      Plaintiffs point to federal law imposing liability on successors in certain

8  employment law contexts as a matter of policy and equity. *See Steinbach v.*

9  *Hubbard*, 51 F.3d 843, 845-46 (9th Cir. 1995). *Steinbach* articulates the test for

10  successor liability under the National Labor Relations Act as follows:

11      [S]uccessor liability can attach when 1) the subsequent employer was
        a bona fide successor and 2) the subsequent employer had notice of
12      the potential liability. Whether an employer qualifies as a bona fide
        successor will hinge principally on the degree of business continuity
13      between the successor and predecessor. The Ninth Circuit has fleshed
        out this test when dealing with other employee individual rights
14      statutes by adding a third consideration: the extent to which the
        predecessor is able to provide adequate relief directly.
15

16  *Id. Steinbach* itself deals with the Fair Labor Standards Act, and holds that the

    successor liability test under the NLRA can apply in that context as well. As
17
    support for its articulation of the elements of successor liability, *Steinbach* cites a
18
    Supreme Court case holding a successor liable for its predecessors' obligation to
19
    reinstate an employee whose firing the NLRB had declared an unfair labor practice
20
    (*Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 171 (1973)), as well as a
21
    Seventh Circuit case holding that a successor employer could be liable for its
22
    predecessor's delinquent pension fund contributions (*Upholsterers' Int'l Union*
23
    *Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1327 (7th Cir.
24
    1990)). *Upholsterers* applies directly to the factual scenario at issue here, and
25
    suggests that RRC could be liable for the prior district court judgment against
26

27  ———————————

28      [1] Because Plaintiff failed to raise its other claims at trial, the Court considers
    them abandoned.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 4

Rodbusters, Inc., if the elements articulated in *Steinbach* are met.

The Court concludes that *Steinbach*'s factors are met on these facts. RRC has never disputed the following key facts: Rodbusters Company and RRC both operated out of the same premises as Rodbusters, Inc., and performed the same type of business. Defendants Tanksley and Seidel were the sole officers/partners of all three entities. RRC used at least some of the same assets used by Rodbusters, Inc., including vehicles, equipment, and a telephone line. RRC also assumed Rodbusters, Inc.'s loan and debt obligations to AmericanWest Bank. RRC took on at least two of Rodbusters, Inc.'s preexisting construction projects. All of RRC's employees were employees of Rodbusters, Inc. Until November 10, 2006, RRC continued to treat its employees as members of a union entitled to certain benefits, which RRC paid to at least one employee directly. These facts establish nearly complete continuity of business operations between Rodbusters, Inc., Rodbusters Company, and RRC, and there can be no question that Tanksley and Seidel had notice of the prior judgment. Therefore, the Court finds Defendants liable for the prior judgment against Rodbusters, Inc.

As for Plaintiff's second claim, alter ego liability, the case law sets forth a similar test:

> [A] non-signatory employer may be held to the terms of a CBA signed by another employer under either the 'alter ego' doctrine or the 'single employer' doctrine. Under the alter ego or single employer doctrines, a non-signatory successor employer will be bound to the terms of its predecessor's CBA if the transaction transferring ownership to the successor is a sham designed to avoid the obligations of a CBA or if the entities comprise an integrated enterprise.

*Sheet Metal Workers Int'l Ass'n., Local No. 359 v. Arizona Mech. & Stainless, Inc.*, 863 F.2d 647, 651 (9th Cir. 1988). Put another way: "[A] successor employer will be bound to the substantive terms of a prior CBA if the successor employer is merely the alter ego of the predecessor employer," that is, where "[t]he changes between predecessor and successor [are] technical in nature rather than a substantive change in the management." *New England Mech., Inc. v. Laborers*

**FINDINGS OF FACT AND CONCLUSIONS OF LAW * 5**

1    *Local Union*, 909 F.2d 1339, 1343 (9th Cir. 1990).

2         Under *New England Mech*., then, the Court must determine whether the

3    facts adduced at trial establish that RRC is merely an alter ego of Rodbusters, Inc.,

4    designed to avoid the obligations imposed by the CBA Rodbusters signed. "Under

5    the alter ego doctrine, the court considers the interrelation of operations, common

6    management, centralized control of labor relations, and common ownership."

7    *Gateway Structures, Inc. v. Carpenters 46 Northern California Counties*

8    *Conference Bd. of United Broth. of Carpenters and Joiners of America*, *AFL-CIO*,

9    779 F.2d 485, 488 (9th Cir. 1985). "If these factors show that the transaction is a

10   sham designed to avoid the obligations of a collective bargaining agreement, the

11   nonsignatory employer will be bound." *Id.*

12         The same facts that establish continuous business operations between

13   Rodbusters, Inc., and RRC also suggest that the two entities had interrelated

14   operations, common management and ownership, and the same centralized control

15   over labor relations – all of the factors set forth in the case law. Moreover, the

16   record includes direct evidence that RRC intended to avoid the CBA's obligations

17   and was merely a technical change in name: Tina Tanksley's letter dated December

18   18, 2006. Therefore, the Court finds that Defendants were alter egos of Rodbusters,

19   Inc., and Defendants thus became liable for their ongoing obligations to contribute

20   to the trust funds under the CBA signed by Rodbusters, Inc.

21         However, the case law also recognizes that an employer may repudiate a

22   preexisting CBA through unambiguous action demonstrating an intent not to

23   comply with the terms of the CBA. *Local 302, Int'l Union of Operating Engineers,*

24   *AFL-CIO, v. West*, 882 F.2d 339, 401 (9th Cir. 1989); *Ferrell*, 812 F.2d at 518;

25   *Int'l Broth. of Elec. Workers, AFL-CIO, Local Union No. 441 v. KBR Elec.*, 812

26   F.2d 495, 499 (9th Cir. 1987). As pointed out repeatedly in the cases, conduct

27   effecting repudiation must be consistent and unambiguous.

28         Plaintiffs argue that repudiation is not a valid defense in this context, for two

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 6

1 reasons: (1) the Ninth Circuit has rejected the argument that an employer can
2 unilaterally repudiate a pre-hire construction industry agreement; and (2) ordinary
3 contract defenses, such as repudiation, are unavailable to defendant employers in
4 an ERISA trust collection action.

5      In support of their first argument, Plaintiffs cite a 1988 Ninth Circuit case
6 adopting a NLRB decision holding that pre-hire agreements under Section 8(f) of
7 the National Labor Relations Act, 29 U.S.C. 158(f), cannot be unilaterally
8 repudiated by either a union or an employer. *Mesa Verde Const. Co. v. N.*
9 *California Dist. Council*, 861 F.2d 1124, 1137 (9th Cir. 1988). Plaintiffs argue that
10 this decision overruled the cases cited above.

11      The first problem with Plaintiffs' argument is that *Mesa Verde* involved a
12 situation where an employer negotiated directly with unions to execute a pre-hire
13 agreement, then later informed the unions it intended to abrogate the agreements.
14 861 F.2d at 1126. Because *KBR Elec.* dealt with a factually identical scenario,
15 Plaintiffs are probably correct that *Mesa Verde* effectively overruled that case
16 (though *Mesa Verde* did not explicitly do so). However, *Mesa Verde* did not even
17 cite *Ferrell*, which deals with a *successor* employer's ability to repudiate a contract
18 signed by a predecessor employer.

19      This distinction brings up the second problem with Plaintiffs' argument:
20 *West*, which also dealt with the predecessor/successor context, was decided *after*
21 *Mesa Verde*. *West* appears to remain good law, as it has been cited by two
22 additional post-*Mesa Verde* cases (both unreported): *N.L.R.B. v. Jarvis B. Webb*
23 *Co.*, 979 F.2d 855 (9th Cir. 1992) and *Carpenters S. Admin. Corp. v. Miller*, 942
24 F.2d 790 (9th Cir. 1991).

25      Plaintiffs point out that the Ninth Circuit later held that *Mesa Verde*'s
26 holding could not be retroactively applied to the employer in *Mesa Verde* itself.
27 895 F.2d 516, 519-20 (9th Cir. 1990). Plaintiffs argue that because all of the facts
28 in *West* occurred before the *Mesa Verde* decision, *West* is merely a late example of

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 7

1  the repudiation defense that *Mesa Verde* ultimately eliminated. However, *West*

2  contains no mention of *Mesa Verde* or retroactivity, nor has the Ninth Circuit's

3  subsequent treatment of *West* indicated that its holding should be limited as

4  Plaintiffs suggest. Therefore, without guidance from the Circuit to the contrary, the

5  Court considers itself bound by *West*.

6       Plaintiffs base their second argument on *Carpenters Health and Welfare*

7  *Trust Fund for California v. Bla-Delco Construction., Inc.*, 8 F.3d 1365 (9th Cir.

8  1993), which holds that an employer cannot raise contract termination as a defense

9  to its alleged breach of a collective bargaining agreement to which the employer is

10  a signatory. In so holding, the Ninth Circuit relied on precedent limiting the

11  defenses available to employers in an ERISA collection action as a matter of

12  policy. *Id.* at 1369 (citing *Sw. Admin., Inc., v. Rozay's Transfer*, 791 F.2d 769, 773

13  (9th Cir. 1986).

14       This argument suffers from the same defect as Plaintiffs' first argument:

15  *Bla-Delco* concerns a different factual context, one in which an employer attempts

16  to terminate a collective bargaining agreement the employer itself signed. The

17  Court finds no instance in which *Bla-Delco* has been applied in the successor

18  employer context. If Plaintiffs are correct that *Bla-Delco* applies to alter ego

19  employers, it would mean that *West* and *Ferrell* are no longer good law. However,

20  until the Circuit declares that to be the case, the Court must rely on the cases that

21  deal with the factual scenario in the case at bar. The Court finds that *Bla-Delco*,

22  like *Mesa Verde*, is inapposite.

23       Therefore, concluding that the repudiation defense recognized in *West* is still

24  available, the Court finds that Defendants unequivocally repudiated their

25  obligations under the CBA on November 10, 2006. All remaining RRC employees

26  withdrew from union membership on that date and agreed to continue working for

27  RRC without receiving the benefits secured by the CBA. RRC made no further

28  benefit payments to the trust funds or any employees. Accordingly, the Court finds

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 8

1  that Defendants are not liable for any failures to contribute after November 10,
2  2006.

3                              **DAMAGES**

4       As successors to Rodbusters, Inc., Defendants are liable for the judgment in
5  Cause No. CV-04-383-RHW: $590,841.71, as well as attorney's fees in the amount
6  of $41,045.50.

7       As for their ongoing failures to contribute, Defendants challenge a number
8  of the calculations set forth in Plaintiff's supplemental audit summary (Ct. Rec.
9  155). Defendants first dispute the percentage of liquidated damages they are
10  obligated to pay under one trust agreement, and argue that the total amount of
11  liquidated damages should be reduced accordingly. After reviewing the parties'
12  briefing on the issue (Ct. Recs. 154 and 159) and the record, the Court agrees that
13  the liquidated damages amount should be reduced as Defendants suggest.

14       Defendants also argue that the auditor's findings regarding "Subsistance
15  [sic] and Contract Labor Hours" are not supported by the facts adduced at trial.
16  However, where an employer fails to keep adequate records as required by ERISA,
17  an auditor is permitted to make reasonable, good faith assumptions, and the burden
18  shifts to the employer to disprove those assumptions. *Brick Masons Pension Trust*
19  *v. Industrial Fence & Supply, Inc.*, 839 F.2d 1333, 1338 (9th Cir. 1988). Rather
20  than attempt to carry that burden by providing any evidence contrary to the
21  auditor's assumptions, Defendants simply point to the absence of the very records
22  Defendants were obligated to keep. Therefore, the Court finds Defendants liable
23  for the auditor's calculated subsistence and contract labor hours.

24       Finally, Defendants dispute their liability for contributions due to four
25  specific funds, arguing that the CBA includes no obligation to contribute to these
26  funds. Plaintiffs provide evidence that, from July 2005 through October 2006,
27  Defendants regularly contributed at least some amounts to the four funds at issue.
28  Past practices between an employer and a union may give rise to implied terms in

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 9

collective bargaining agreements. *Ass'n of Flight Attendants v. Mesa Air Group, Inc.*, 567 F.3d 1043, 1049 (9th Cir. 2009) (citing *Bhd. Ry. Carmen v. Missouri Pacific R.R.*, 944 F.2d 1422, 1429 (8th Cir. 1991)). Because Defendants' conduct evinces a belief that Defendants were under a continuous obligation to contribute to the four funds, the Court finds that the duty to contribute was an implied term in the CBA. Therefore, the Court rejects Defendants' argument and finds them liable for their delinquent contributions to the four funds.

Therefore, the Court finds Defendants liable for the amount of total contributions set forth in Plaintiffs' audit summary: $139,274.94. The Court reduces the liquidated damages by the amount Defendants propose, for a total of $19,248.94. Defendants are also liable for interest on the sum of these two amounts. In their proposed judgment, Plaintiffs are directed to recalculate the amount of interest due, accounting for the reduced amount of liquidated damages.

Accordingly, **IT IS HEREBY ORDERED:**

Plaintiffs are to present a proposed judgment consistent with this order.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order and to furnish copies to counsel.

**DATED** this 12th day of February, 2010.

*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge

Q:\CIVIL\2007\NW Iron Board\ffcl.ord.wpd

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 10